**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

LARRY ALFONSO MOORER, #413055,

        Petitioner,

v.                                   Case No. 05-CV-74924

ANDREW JACKSON,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Larry Alfonso Moorer is a state inmate currently incarcerated at Lakeland Correctional Facility in Coldwater, Michigan, where Carol R. Howes is the warden. At the time Petitioner initially filed his request for habeas relief, he was incarcerated at Mound Correctional Facility in Detroit, Michigan where Respondent Andrew Jackson was the warden. Petitioner was convicted of first-degree premeditated murder and possession of a firearm during the commission of a felony. He filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the court will deny the petition.

## I. BACKGROUND

Petitioner was tried in Wayne County, Michigan. On May 9, 2002, a circuit court jury found Petitioner guilty of first-degree murder, Mich. Comp. Laws §750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. Petitioner was sentenced on June 11, 2002 to mandatory life for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction.

The convictions arose from the shooting and killing of William Armour, who was dating Petitioner's estranged wife, Yvonne Moorer, on July 19, 2001. Respondent incorporates within its answer Petitioner's version of events as presented to the Michigan Court of Appeals, and Petitioner recites *verbatim* as part of his statement of facts the relevant facts regarding Petitioner's conviction from the opinion of the Michigan Court of Appeals. The state appellate court in this case set forth underlying facts, which are presumed correct on habeas review, s*ee Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. App'x 730 (6th Cir. 2002), as follows:

> Armour's body was discovered by a passerby who was walking along a street and noticed a person lying next to a car in a driveway. The vehicle's lights were on and a door was open. Armour had been shot in the chest with a .32 caliber gun.
>
> According to several witnesses at trial, including Yvonne, defendant's daughter, his neighbors, and a former roommate, defendant had made threats against Armour and had stated on numerous occasions that he was going to kill Armour. The trial court permitted several witnesses to also testify that Armour told them that defendant had threatened Armour's life.
>
> Defendant testified and denied even knowing that Yvonne was dating Armour until after Armour's murder. Defendant's testimony was in direct contradiction of the testimony from other witnesses, both with regard to the threats and with regard to events before the shooting.

*People v. Moorer,* 683 N.W.2d 736, 738 (Mich. Ct. App. 2004). The Michigan Court of Appeals affirmed Petitioner's conviction. *Id.* The claims before the Michigan Court of Appeals and those presented in his supplemental brief in support of the appeal were as follows: (1) Petitioner's right to confront witnesses was violated due to the repeated introduction of hearsay evidence, (2) Petitioner was denied effective assistance of counsel due to his attorney's failure to assert spousal privilege, (3) there was insufficient

evidence to sustain a first-degree murder conviction and (4) there was misconduct by the prosecutor during his closing argument and during his questioning of Petitioner during trial about whether each witness who provided unfavorable testimony was a liar. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, raising the same issues. The court directed the Wayne County Prosecuting Attorney "to answer the defendant's application for leave to appeal within 28 days after the date of this order. Among the issues to be addressed is whether, in light of *People v. Fisher,* 449 Mich. 441; 537 N.W.2d 577 (1995) and *People v. Ortiz,* 249 Mich. App. 297; 642 N.W.2d 417 (2001), the court of appeals properly held that the admission of the victim's statements violated MRE 803(3)." *People v. Moorer,* 692 N.W.2d 380 (Mich. Sup. Ct. 2005).[1] On March 1, 2005, the Wayne County Prosecutor filed an "Opposition to Application for Leave to Appeal." Upon review, the state's highest court denied Petitioner's application for leave to appeal. *People v. Moorer,* 472 Mich. 901; 698 N.W.2d 153 (Table) (Mich. May 13, 2005).

Petitioner subsequently filed a petition for writ of certiorari with the United States Supreme Court, but was denied relief. *Moorer v. Michigan,* 546 U.S. 898 (2005). Petitioner now seeks a writ of habeas corpus, asserting the same claims presented in the state appellate courts. Respondent has filed an answer to the petition, arguing that the claims should be denied based upon grounds of procedural default, for being non-cognizable and for lack of merit.

## II. STANDARD

---

[1]Justice Marilyn J. Kelly dissented, stating in part that the Court "should grant leave rather than giving the prosecutor an independent opportunity to answer." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d

310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III. DISCUSSION

### A. The Right to Confront Witnesses

### 1. Hearsay Evidence

Petitioner claims that five erroneous evidentiary rulings deprived him of his right to a fair trial and his right to confront witnesses. Each of the evidentiary issues concerns the trial court's ruling permitting the testimony of family and friends of Armour, as well as testimony from Yvonne Moorer about what Armour told them regarding his interaction, communication and relationship with Petitioner. The disputed hearsay testimony consisted of the following:

> First, Armour's brother testified that about two days before the shooting Armour told him about having a problem, and that the husband of the woman he was seeing, Yvonne, was looking for him with a pistol and wanted to kill him. Second, Armour's daughter testified that Armour called her on July 19, 2001, and told her to tell her mother to secure some life insurance covering Armour because some guy was trying to kill him. He inquired about a gun. He also told her that he had had a verbal confrontation with defendant and told her where defendant lived, in case anything happened to him. Third, Armour's mother testified that the week before the shooting, she heard Armour on the telephone telling someone that he was not afraid of him and that, afterwards, Armour told her that the caller was defendant and he was threatening to kill Armour. Armour asked his mother about obtaining a gun and she also overheard Armour asking his brother for a gun. Fourth, Willis testified that Armour said that defendant had threatened him and would kill him if he ever caught him by himself, and told Willis that he had asked some people for a gun because he feared for his life. Fifth, Yvonne testified that Armour told her that defendant was calling and threatening him and that defendant said that he had a bullet for each of them.

*Moorer,* 683 N.W.2d at 739. The trial court ruled that the testimony was admissible

under the "state of mind" exception to the hearsay rule pursuant to MRE 803(3).  The

Michigan Court of Appeals concluded that:

> [T]he trial court erred generally in admitting Armour's statements to others concerning defendant's threats and actions.  Nonetheless, we conclude that the error does not require reversal of defendant's convictions. Evidentiary error does not merit reversal unless it involves a substantial right, and after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative.
>
> Defendant's former roommate, Michael Toler, testified that defendant admitted shooting Armour.  Further, defendant had a .32 caliber gun, which was the same caliber as the murder weapon, and defendant had threatened to harm Armour.  There was also testimony from others regarding incriminating statements made by defendant.  Defendant's and Yvonne's daughter testified that defendant and Toler visited her at college the day before the shooting, that defendant questioned her about Yvonne and Armour, and that defendant stated that he was going to shoot Armour. This testimony was supported by Toler, who testified that he was with defendant and heard the conversation and defendant's threats.  Yvonne testified that defendant called her and threatened that he had a bullet for Yvonne and Armour, which was the same threat Armour said defendant had made.  Willis testified that defendant left a threatening note on her door.  Yvonne testified that she also saw the note and that, when she questioned defendant about it, he replied that he knew that she and Armour were in a relationship.
>
> A couple who lived next door to the home that defendant and Yvonne rented out, testified that she also saw the note and that, when she questioned defendant about it, he replied that she and Armour were in a relationship.
>
> Although defendant essentially denied having these conversations with the various witnesses and denied making threats against Armour, this was a matter of credibility for the jury to decide.  Defendant's blanket denials contradicting the testimony of numerous witnesses could have compromised his credibility.  In light of the untainted evidence, he cannot show that any error was outcome determinative.

*Id.* at 743 (internal citations omitted).

Generally, state-court evidentiary rulings cannot rise to the level of due process

violations unless they "offend . . . some principle of justice so rooted in the traditions and

conscience of our people as to rank as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). The fundamental principle of justice at issue here is the right of confrontation provided by the Sixth Amendment to the United States Constitution.

## 2. Procedural Default

The Court recognizes that Petitioner is in procedural default relative to his Confrontation Clause claim. In this case, the last state court to issue a reasoned opinion addressing this claim held that the claim was not preserved for review because there was no challenge relative to this issue before the trial court. *Moorer,* 683 N.W.2d at 739. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v.*

*Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also *Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits of Petitioner's claim.

"The Sixth Amendment guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.'" *Danner v. Motley,* 448 F.3d 372, 377 (6th Cir. 2006) (quoting U.S. Const. Amend. VI). The amendment applies to state court proceedings. *Pointer v. Texas,* 380 U.S. 400, 403 (1965), and it provides a criminal defendant with "the right to physically face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987).

It is undisputed that William Armour was unavailable at trial and was not subject to cross-examination at any point during Petitioner's criminal proceedings, as he is the decedent in this case. Respondent does not address the issue of whether the statements in dispute are hearsay, except to assert that the issue is a non-cognizable state law claim. Out-of-court statements that are testimonial in nature are not admissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statement falls within a hearsay exception or are otherwise trustworthy. *Crawford v. Washington,* 541 U.S. 36, 59 (2004).[2]

---

[2]At the time of Petitioner's trial, United States Supreme Court precedent established that the hearsay statements of a declarant who is not present for cross-examination at trial are admissible only if (1) the declarant is unavailable and (2) the evidence falls within a firmly rooted exception to the hearsay rule or contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Ohio v. Roberts,* 448

8

The Michigan Court of Appeals concluded that the purported statements from Armour that: (1) he had a confrontation with Petitioner, (2) Petitioner wanted to kill Armour, (3) Petitioner had threatened to kill Armour, (4) Petitioner had a bullet for Armour and (5) Petitioner was looking for Armour with a gun, do not fit within the FRE 803(3) parameters.[3]  FRE 803(3)  specifically excludes statements that relate to past events, as they are statements of "memory or belief" to prove a fact remembered or believed.[4]

The Michigan Court of Appeals found that the trial court erred when it admitted Armour's statements, but that the error was harmless.  The appellate court went on to state that: [i]n light of the other evidence of defendant's guilt, we cannot conclude that the error resulted in a conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence."  *Moorer,*  683 N.W.2d at 743 (internal citations omitted).

### 3.  Harmless Error

---

U.S. 56, 66 (1980).  *Roberts* was abrogated in part by *Crawford v. Washington,* 541 U.S. 36 (2004).  This case comes under a *Crawford* analysis because Petitioner's conviction became final after the *Crawford* decision overruled *Roberts.*

[3]The Michigan Court of Appeals did not cite *Crawford* in its opinion.  However, although it found that the Confrontation Clause issue was not preserved for appellate review and therefore subject to a plain error analysis, it addressed the issue in terms of the admissibility of the hearsay under the Sixth Amendment.

[4]FRE 803(3) states that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), [is not excluded by the hearsay rule even though the declarant is available as a witness] but [this does not include] . . . a statement of memory or belief to prove that fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

Confrontation Clause errors are subject to a harmless error analysis. *Delaware v. Van Arsdale,* 475 U.S. 673, 684 (1986). To determine whether the trial court's Confrontation Clause error was harmless, the court must examine the following factors: (1) the importance of the witness' testimony to the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted and (5) the overall strength of the prosecution's case. *See Stapleton v. Wolfe,* 288 F.3e 863, 867-68 (2002) (citing *Van Arsdale,* 475 U.S. at 684). When a federal court is reviewing a harmless-error claim it "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in [*Brecht v. Abrahamson,* 507 U.S. 619 (1993)], and whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in [*Chapman v. California,* 386 U.S. 18 (1967).]" *Fry v. Piller* __ U.S.__, 127 S.Ct. 2321, 2328 (2007). To resolve the harmless error issue, the reviewing federal court must determine whether the constitutional violation"had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623; *Forensic v. Birkett,* 501 F.3d 469, 472 (6th Cir. 2007).

Applying the *Van Arsdale* factors, Armour's statements appeared to buttress the testimony of Yvonne Moorer, Michael Toler, Willis and Shavonne Moorer relative to threatening statements made by Petitioner regarding shooting Armour as well as his knowledge of the affair between Yvonne Moorer and Armour. The testimony, however, was cumulative. Moreover, "given the congruity of the statements by Armour and the

10

above listed witnesses, the court must acknowledge that "[w]here a jury hears testimony that essentially reiterates [the statements at issue] without additional damaging testimony, no substantial injurious effect or influence is injected into the trial." *Shaneberger v. Bell,* 2007 WL 2688563, *12, (E.D. Sept. 6. 2007) (citing *Norman v. Bradshaw,* 2006 WL 3253121, *14 (N.D. Ohio Nov. 8, 2006)).

Additionally, these prosecution witnesses provided corroborating testimony concerning Petitioner's intent to harm or shoot Armour, which is a material issue. The court also finds that the prosecution presented a strong case against Petitioner notwithstanding the statements at issue. In addition to the admissible testimony referenced by the Michigan Court of Appeals, Yvonne Wilburn, who resided next to a home the Moorers rented to tenants, testified that:

> [H]e [Petitioner] knew she [Yvonne Moorer] had a boyfriend and he seemed like he was a little upset about the issue that she had a boyfriend. And he said if he caught them together, he was going to do something to them . . . . He said he would kill them if he caught them together.

(5/7/02 Tr. Vol. 2 at 149.) Colie Wilburn, Yvonne Wilburn's husband, testified that Petitioner told him "[Petitioner] wanted to get them [Yvonne Moorer and Armour] both together and kill them." (*Id.* at 140.)

Petitioner had a full opportunity to challenge all of the witnesses who attested to his threats upon Armour, as he testified on his own behalf. During his testimony, Petitioner generally denied that he ever told anyone that he wanted to or planned to kill Armour and further denied even knowing about the existence of an affair between Armour and Yvonne Moorer until the day Armour was murdered. (5/8/02 Tr. Vol. 3 at

20, 40.)  Accordingly, the *Van Arsdale* factors favor a finding of no constitutional violation.

In light of that observation, the state court's conclusion of harmlessness of the Confrontation Clause error was not objectively unreasonable.  Due to the deference owed to state courts, the court determines that the decision of the Michigan Court of Appeals did not result in an unreasonable application fo *Chapman, Brecht* or *Fry.*

### B.  Ineffective Assistance of Counsel

Petitioner contends that he is entitled to habeas relief because trial counsel was ineffective for failing to assert the spousal privilege in order to preclude the admission of  testimony from Yvonne Moorer.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

The Michigan Court of Appeals concluded as follows:

> The spousal privilege provides that one spouse may not be examined in a criminal prosecution of the other spouse without the testifying spouse's consent, except under certain specified circumstances. MCL §600.2162(2). Defendant contends that counsel was ineffective for failing to assert the privilege with respect to Yvonne. However, defendant has failed to show that Yvonne did not or would not have consented to testifying at trial. Defendant has therefore failed to show that any objection to Yvonne's testimony by defense counsel would not have been futile. Counsel is not required to raise meritless or futile objections, and thus defense counsel was not ineffective.

*Moorer,* 683 N.W.2d at 744 (internal citations omitted). The court agrees.

Petitioner relies upon a greeting card from Yvonne Moorer, which he interprets as meaning that she felt threatened, pressured and forced to testify and that her testimony was not given of her own free will under Mich. Comp. Laws §600.2162(1). (*See* Pet.'s Br., Ex. D.) Petitioner represents that he has received several such letters

and cards and that his spouse has also verbally expressed these same feelings to him on numerous occasions.   (*See* Pet.'s Br. at 19-20).

Petitioner attached a copy of *one* card to his habeas pleading, which Yvonne Moorer appears to have been sent during Petitioner's incarceration.  The relevant language is the following:

> That's what I tried to tell those people.  That I could not testify against you because I was your wife. They said the law had change[d].  I had to. Whatever your lawyer want[s] me to say about that I have no problem with that.  I knew I was not suppose[d] to be put on that stand.

(*Id.,* Ex. D.)  Crediting the statement as attributed to Yvonne Moorer, there is nothing in the quoted language that indicates that she felt threatened, coerced or otherwise inappropriately pressured to testify against the Petitioner.  She states that she was under the impression that she should not have been permitted to testify against the Petitioner because she was still legally married to him at the time of her testimony.

Even if the court were to interpret this letter as evidence of coercion, the record indicates that Petitioner and Yvonne Moorer were estranged and the marital relationship was arguably abandoned.  Generally, where two people are legally married at the time of trial, one spouse is prohibited from testifying against the other if the privilege has been invoked.  Mich. Comp. Laws §600.2162; *People v. Hamacher*, 438 NW2d 43 (1989). However, Michigan law provides an exception in cases of desertion or abandonment.  Mich. Comp. Laws §600.2162(1)(e).  Because the spousal privilege is narrowly construed, exceptions to the privilege should be broadly construed.  *People v. Eberhardt*, 518 NW2d 511 (1994).

Testimony revealed that: (1) Petitioner had not resided with Yvonne Moorer since a month prior to the date of the offense, which at the relevant time was close to one year, (2) she had consulted an attorney about divorcing the Petitioner and (3) she was afraid of Petitioner. Not to be ignored, of course, is the essence of the crime charged, *i.e.*, that Petitioner had murdered her paramour. The record thus clearly indicates that Petitioner and Yvonne Moorer were estranged.[5] Accordingly, there is persuasive evidence that the marriage was deserted or abandoned, which would have precluded Petitioner's counsel from successfully invoking the spousal privilege. Because "[a]n attorney's failure to raise a futile argument does not constitute ineffective assistance of counsel," the court concludes that habeas relief is not warranted for this claim. *Harris v. United States,* 204 F.3d 681, 683 (6th Cir. 2000).

### C. Sufficiency of Evidence

Petitioner argues that insufficient evidence was presented at trial to sustain his conviction for first-degree murder because the elements of premeditation and deliberation were not established beyond a reasonable doubt. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318

---

[5]Yvonne Moorer decided to end the marriage in December 2000 and consulted an attorney regarding divorce. Petitioner moved out in June 2001. The shooting occurred on July 19, 2001. Petitioner was sentenced on June 11, 2002.

(1979).

"[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnotes omitted). This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at n.16. Pursuant to 28 U.S.C. §2254(d)(1), the court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.

The Michigan Court of Appeals in this case concluded as follows:

In reviewing a claim of insufficient evidence in a criminal case, this Court views the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v. Nowack,* 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000). The standard of review is deferential which requires that a reviewing court 'draw all reasonable inferences and make credibility choices in support of the jury verdict.'" *People v. Gonzalez,* 468 Mich. 636, 640-41, 664 N.W.2d 159 (2003), quoting *Nowack,* supra at 400, 614 N.W.2d 78. Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of a crime. *Id.* In determining whether a defendant acted with premeditation, the trier of fact may consider "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer,* 229 Mich. App. 293, 300; 581 N.W.2d 753 (1998).

We conclude that the circumstantial evidence presented at trial, and reasonable inferences drawn from that evidence, were sufficient for the jury to find that defendant killed Armour and that the killing was deliberate

and premeditated. There was ample evidence that defendant considered the killing long before the shooting occurred. Defendant expressed his intent to kill Armour to numerous witnesses, who testified at trial regarding defendant's various statements. Defendant's actions and statements indicated that he was upset over Armour's relationship with Yvonne. Defendant told his daughter and neighbors that he intended to kill Amour. According to Toler, defendant also told Toler that he wanted to harm Armour, called Toler after the shooting to say he "got" him, and testified that defendant took a .32 caliber weapon whenever he left home, which was the same caliber as that of the gun used to kill Armour. The jury could have found this testimony credible and could have reasonably inferred from the testimony and circumstances that the shooting was premeditated and deliberate. *[People v. Ortiz,* 249 Mich. App. 297, 302-03, 642 N.W.2d 417 (2001)].

*Moorer,* 683 N.W.2d at 744-45. The court agrees and finds that there was sufficient evidence to support the jury in finding sufficient evidence of Petitioner's guilt: (1) Petitioner's former roommate testified that Petitioner threatened to shoot Armour and ultimately admitted to committing the shooting, (2) Petitioner had in his possession the same caliber gun as the murder weapon, (3) Petitioner's daughter testified that Petitioner questioned her about the relationship between Armour and her mother and stated that he was going to shoot Armour, (4) Armour's former girlfriend testified that Petitioner left a threatening note regarding the victim on her door, (5) neighbors testified that Petitioner told them he was going to kill Armour if he caught Yvonne Moorer and Armour together and (6) Yvonne Moorer testified that Petitioner threatened, in her presence, that he had a bullet for her and for Armour.

At trial, Petitioner essentially denied having these conversations with these various witnesses and denied making threats against Armour. There was sufficient evidence from several other witnesses implicating Petitioner in the shooting death of the victim. A rational juror would be justified in concluding that Petitioner was guilty of the

charged offenses. The Michigan Court of Appeals, although not citing *Jackson,* cited case law which clearly incorporates the *Jackson* standard. Petitioner has not presented any evidence to show that the state court's conclusions were erroneous. The standard under which habeas review is conducted, of course, is not whether this court would or would not determine the premeditation element proven beyond a reasonable doubt. A court on habeas review does not have, among other things, the benefit of observing witnesses' demeanor and assessing their credibility. *See Gail v. Parker,* 231 F.3d 265, 307 (6th Cir. 2001), overruled on other grounds by *Bowling v. Parker,* 344 F.3d 487, 501 (6th Cir. 2003).

Because the state court's findings of fact are presumed correct, this court concludes that the Michigan Court of Appeals' decision that a rational trier of fact could have found the premeditation element was proven beyond a reasonable doubt did not result in a decision that involved an unreasonable application of clearly established federal law. 28 U.S.C. §2254(d)(1). Petitioner is not entitled to federal habeas corpus relief for this claim.

### D. Prosecutorial Misconduct

Lastly, Petitioner maintains that the prosecutor engaged in misconduct by repeatedly asking Petitioner, on cross-examination during the trial, about whether certain prosecution witnesses were lying because Petitioner denied telling anyone about wanting to harm Armour. Petitioner also claims that during closing arguments, the prosecutor injected her personal opinion about the case in front of the jury.

As an initial matter, the Court recognizes that Petitioner is in procedural default relative to his prosecutorial misconduct claim. In this case, the last state court to issue

18

a reasoned opinion addressing Petitioner's prosecutorial misconduct claim held that the claim was not preserved for review because there was no challenge to this issue before the trial court. *Moorer,* 683 N.W.2d at 745. For the reasons set forth above, the court finds that the interests of judicial economy are best served by addressing the merits of the prosecutorial misconduct claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999). The court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

### 1. Closing Argument

The first question to consider is whether the prosecutor's conduct or remarks during his closing argument were improper. *See Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.* at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were said deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender*, 376 F.3d at 528. The statement at issue is as follows:

Third, that the intent to kill was premeditated, that is thought out beforehand. Well, my God, I have to tell you, the ten years I have been doing this as a Prosecutor, I have never seen such a case of premeditation.

(5/8/02 Tr. Vol. 3 at 70.)   The Michigan Court of Appeals stated: "[w]e cannot conclude that defendant's substantial rights were affected by this isolated remark, and again, a curative instruction, if requested, could have eliminated any undue prejudice to the defendant." *Moorer, supra,* 683 N.W.2d at 45 (internal citations omitted) .  The court agrees.  Prosecutors are ordinarily "entitled to wide latitude in [closing] argument and may fairly respond to arguments made by defense counsel," as well as to the defense's strategy. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000).  The trial court instructed the jury that attorney statements and arguments are not evidence and that such statements and arguments "are only meant to help you understand the evidence and each side's legal theories."  (5/8/02 Tr. Vol. 3 at 104.)  Discretion and basic tenets of professionalism should warn prosecutors away from making statements that, like this, refer the jury to their purported personal experience and how that experience is supposed to relate to the case at hand.  The same thought could have, and should have, been expressed without reference to personal experience.  It would have lost none of its impact in so doing.  The court, however, does not find that the prosecutor's fleeting remark was so markedly inappropriate that it exceeded the bounds of fair advocacy.

### 2.  Cross- Examination

There was an exchange between Petitioner and the prosecutor during his cross examination where the prosecutor asked Petitioner if several of the witnesses were

lying.  Petitioner claims that the prosecutor engaged in misconduct by asking questions

about statements made to the witnesses by Petitioner regarding his anger toward

Armour, his threats against Armour and Yvonne and his admission that he shot Armour.

*Id.* at 40-41.  The Michigan Court of Appeals stated:

> Our review of defendant's' claims convinces us that appellate relief is
> unwarranted.  Even assuming for purposes of argument that the
> prosecutor's examination of defendant and comments regarding the
> credibility of the witnesses were improper, any undue prejudice could have
> been cured by a timely objection and curative instruction.

*Moorer, supra,* 683 N.W.2d at 745 (internal citations omitted).  The court concurs.  The

prosecution may imply or state that a defendant or defense witnesses are lying so long

as the prosecutor emphasizes discrepancies between the testimony in dispute and the

record.  *United States v. Owens,* 426 F.3d 800, 806 (6th Cir. 2005).  The prosecutor in

this case emphasized those discrepancies between its witnesses and Petitioner's

testimony.  Using evidence presented at trial for the purpose of demonstrating to a jury

that certain witnesses were not truthful during their testimony does not constitute

prosecutorial misconduct. *Id.; see also United States v. Collins,* 78 F.3d 1021 (6th Cir.

1996) ("counsel must be given leeway to argue reasonable references from the

evidence.  Where there is conflicting testimony, it may be reasonable to infer, and

accordingly to argue, that one of the two sides is lying.").  Therefore, the prosecutor's

questions drawing the jury's attention to the discrepancies in the trial testimony were

proper and do not rise to the level of prosecutorial misconduct.  The court will not grant

habeas relief relative to this claim.

### E.  Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of

appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show . . . that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted.[6] Therefore, the court will deny a certificate of appealability.

## IV. CONCLUSION

---

[6]The court recognizes that the trial court generally erred in admitting Armour's statements. This however, does not mean that the majority opinion, or more importantly, the underlying court of appeals decision was an unreasonable application of United States Supreme Court law in its determination that the trial court error was harmless. Nor does it mean, in this case, that reasonable jurists would disagree that such an opinion was unreasonable.

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States. Accordingly,

IT IS ORDERED that Petitioner's "Application for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's "Motion for Leave to File Supplement to Petition for Writ of Habeas Corpus"[7] [Dkt. #27] is DENIED as MOOT.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 17, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 17, 2008, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

---

[7]Petitioner argues in his motion to supplement that the admission of Armour's statements at trial was not harmless error and that the rules set forth in *Chapman*, *Brecht* and *Fry* were misapplied. The court addressed this claim within this opinion and found that it is without merit.